UNITED STATES, Appellee,

v.

Private First Class Charles J. TRUITT, Jr., 318–70–9389, United States Army, Appellant.

ACMR 9000297.

U.S. Army Court of Military Review.

13 June 1991.

For Appellant: Captain Robin N. Swope, JAGC, Captain Michael J. Coughlin, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Captain Denise J. Arn, JAGC, Captain Karen R. O'Brien, JAGC (on brief).

Before GRAY, FOREMAN and HAESSIG, Appellate Military Judges.

## OPINION OF THE COURT

FOREMAN, Senior Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of conspiracy to steal explosives, wrongful appropriation of a military vehicle, and wrongful appropriation of explosives, in violation of Articles 81 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 921 (1982). His approved sentence provides for a bad-conduct discharge, confinement for twenty-four months, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade.

■ The appellant contends that the military judge failed to instruct the court members properly on voting procedures. The military judge instructed the members that voting must be by secret written ballot and that deliberations and voting must be free from the influence of superiority in rank; but he did not instruct them that the "junior member shall collect the ballots and count the votes," nor did he instruct them that, "the President shall check the count and inform the other members of the result," as required by Article 51, Uniform Code of Military Justice, 10 U.S.C. § 851 (1982), and the Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 921(c)(6)(B). The appellant argues that the military judge's omission was plain error; the government concedes that the military judge erred, but argues that the error was waived by the trial defense counsel's failure to object to the procedural instructions and that the error is harmless.

In *United States v. Kendrick*, 29 M.J. 792 (A.C.M.R.1989), we held that the military judge erred by instructing that the junior member will count the ballots but will not look at the votes. We held that the error was harmless in the absence of evidence that the president miscounted the votes or incorrectly announced the findings. We noted that,

> When voice voting was replaced by secret written ballot in 1920, the mechanism for insulating junior members from the opinions of their seniors was retained by requiring that the junior member collect the ballots. If the junior member collects the ballots, the senior member is less likely to see how each member voted; but if the senior member collects the ballots, then he can readily identify each member's ballot, raising the possibility that the junior members will defer to the senior member's opinion.

*Kendrick* at 794. Our observation was not based on the legislative history, which is extremely sparse on the subject, but on the plain language of Article 51.

Another panel of this court, facing a similar issue, has held that the requirement for the junior member to count the votes is a mere ministerial act. *United States v. Llewellyn*, 32 M.J. 803 (A.C.M.R.1991). The *Llewellyn* decision is based on the 1949 hearings preceding the adoption of the Uniform Code of Military Justice in 1950, during which it was observed that "they have to have a so-called leg-boy and it is always the junior member who does that." Uniform Code of Military Justice: Hearings on HR 2498 Before a Subcomm. of the House Comm. on Armed Services, 81st Cong., 1st Sess. 1074–75 (1949), *reprinted in* 1 Index and Legislative History of the Uniform Code of Military Justice, 1950 at 542–43 (1985).

While the 1949 hearings are instructive regarding the minimal importance attached to the vote counting procedure by those who re-enacted the statutory requirement in 1950, they shed little light on the legislative intent behind the 1920 Articles of War, which first enacted the requirement for the junior member to count the votes. We do not regard the vote counting procedure as mere administrative minutia, but rather as what the statute obviously creates: a vote verification procedure. 2A Sutherland, Statutes and Statutory Construction § 46.01 (C. Sands 4th ed. 1973) (the plain-meaning rule). Regardless of the original intent, the practical effect of the vote collection and counting procedures currently in force are as we stated in *Kendrick*.

■ Nevertheless, both *Kendrick* and *Llewellyn*, although taking different routes, arrive at the same destination.

Both require a test for prejudice. Turning to the case before us, we have no allegation or evidence that the independence of junior members was infringed or that the president miscounted the votes or incorrectly announced the actual findings.[1]

We have considered the issues raised personally by the appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find that they are without merit.

The findings of guilty and the sentence are affirmed.

Chief Judge GRAY and Judge HAESSIG concur.

---

1. Contrary to appellant's contention, this court may consider affidavits to determine whether superiority of rank was used to influence voting or that the president of the court substituted his own opinion for the findings of the members. *United States v. Stone*, 26 M.J. 401, 403 n. (C.M.A.1988); *United States v. Accordino*, 20 M.J. 102, 104 (C.M.A.1985).